## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

IGOR BELYAKOV,

     Plaintiff,

     v.

MEDICAL SCIENCE & COMPUTING,

     Defendant.

Civil Action No. TDC-13-3657

### MEMORANDUM OPINION

Plaintiff Dr. Igor Belyakov, a United States citizen of Russian national origin, applied for a scientific research position with the National Institutes of Health ("NIH") through a staffing firm, Defendant Medical Science & Computing ("MSC").  When he did not get the job, Belyakov filed this action against MSC alleging discrimination on the basis of age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 633a *et seq.* (2012), discrimination on the basis of national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (2012), and retaliation in violation of Title VII.  Presently pending before the Court are Belyakov's Motion to Reconsider, ECF No. 27, MSC's Motion to Dismiss and for Summary Judgment, ECF No. 29, and Belyakov's Dispositive Pretrial Motion, ECF No. 36, which the Court construes as a motion for summary judgment.

The motions are fully briefed, and no hearing is necessary to resolve the issues. *See* Local Rule 106.5 (D. Md. 2014).  For the reasons that follow, the Motion to Reconsider is DENIED, MSC's Motion to Dismiss and for Summary Judgment is GRANTED, and Belyakov's Dispositive Pretrial Motion is DENIED.

## BACKGROUND

### I.     Dr. Belyakov

Belyakov was born in Estonia in July 1960 and immigrated to the United States in 1993. Belyakov Dep. 13:13–22, Apr. 3, 2014, ECF No. 29-1.  At the time that Belyakov was born, Estonia was part of the Soviet Union.  *Id.* at 13:17–18.  Belyakov received a medical degree in 1983, a Doctor of Philosophy ("Ph.D.") degree in 1986, and a Doctor of Science degree in 1993, all from Russian academic institutions, before completing a postdoctoral fellowship at the Immunobiology Vaccine Center at the University of Alabama in 1995.  *See* Pl.'s Resp. to Def.'s Mot. Dismiss & Summ. J. ("Pl.'s Resp.") Ex. 3, ECF No. 31-4.  From 1996 to 2006, Belyakov worked at NIH – first as a postdoctoral fellow in molecular immunogenetics and vaccine research at NIH's National Cancer Institute from 1996 to 2001, then as a senior staff scientist in the Vaccine Branch of the Center for Cancer Research from 2001 to 2006.  *Id.*  NIH is part of the United States Department of Health and Human Services ("HHS") and is a medical research agency headquartered in Bethesda, Maryland.

Between 2004 and 2010, Belyakov filed three Equal Employment Opportunity Commission ("EEOC") charges against HHS that he afterward brought to federal district court. *See Belyakov v. Leavitt*, No. DKC-04-4008, Mem. Op. at 5 (D. Md. Sept. 6, 2007); *Belyakov v. Leavitt*, No. DKC-06-2973, Mem. Op. at 2 (D. Md. Sept. 6, 2007); *Belyakov v. Johnson*, No. DKC-08-0757, Mem. Op. at 2 (D. Md. Feb. 5, 2009).  All three of those EEOC charges were resolved prior to the events concerning this case.  In 2010, Belyakov filed a fourth EEOC charge against HHS for discrimination and retaliation after he was not considered for a tenure track position at NIH.  *See* Belyakov Apr. 3 Dep. 34:24–35:23.  At the time the parties in this case filed their motions for summary judgment, that charge was still pending before the EEOC.  *See*

*id.* at 38:21–24. When he applied for the position at issue in this case, Belyakov was a research assistant professor at the Michigan Nanotechnology Institute for Medicine and Biological Sciences at the University of Michigan. *See* Pl.'s Resp. Ex. 3 at 1.

## II. The Job Posting by MSC

MSC is a Maryland firm that provides scientific research and information technology staff to federal government agencies. Mahyera Decl. ¶ 7, ECF No. 29-1. Although many of its personnel work on-site at the agencies, they are hired and employed by MSC. *See id.* ¶ 9. In most cases, when hiring employees for its customers, MSC uses a recruiting procedure that involves posting an open position, collecting applications, interviewing selected applicants, and then making an offer of employment to a final candidate. *See* Mahyera Decl. Ex. E, ECF No. 29-1, at 25–26. Once the final candidate accepts the offer, MSC sends "a 'regret' letter" to the applicants who were not selected for the position. *Id.* at 27. MSC can waive the full recruiting process, however, "when the customer, after reviewing the resume of a single candidate, even before other candidates have been submitted, expects [MSC] to make an offer of employment." *Id.* at 25.

One of MSC's customers is NIH. Mahyera Decl. ¶ 8. In October 2012, Anna Mahyera, the Vice President and Chief Operating Officer of MSC, learned about an open research scientist position at NIH and asked whether MSC needed to gather a pool of potential candidates. Mahyera Decl. Ex. F, ECF No. 29-1. On November 5, 2012, Valerie Lawrence, an employee at NIH, informed Mahyera that NIH intended to fill the position with Dr. Guillaume Stewart-Jones, then a 34-year-old of British national origin who worked in Oxford, England. Mahyera Decl. Ex. G, ECF No. 29-1. Concerned that Stewart-Jones would be unwilling to relocate to the United States or unable to get a work visa, MSC decided to post the open research scientist

position.  Mahyera Decl. ¶ 17.  MSC wanted to have a pool of potential candidates in case
Stewart-Jones did not accept the position.  *Id.*

On November 29, 2012, MSC posted online the research scientist position job
announcement, which stated that:

> Medical Science & Computing, Inc. (MSC) is currently searching for a scientist to
> support the National Institutes of Health (NIH).  This opportunity is a full time
> position with MSC and is located in Rockville, Maryland.

Mahyera Decl. ¶ 18, Ex. H, ECF No. 29-1.  The job posting listed the position's duties and
responsibilities, noted that the position required a Ph.D. or equivalent degree, and indicated that
"[e]xperience working with mucosal immunity or adenovirus is preferred."  *Id.*  Thirty-one
potential candidates, including Belyakov and Stewart-Jones, responded to the job posting.
Mahyera Dec. ¶ 19.

Belyakov responded to the job posting on December 12, 2012, by creating a profile and
uploading his *curriculum vitae* ("CV") to MSC's website.  Mahyera Decl. ¶¶ 19–20.  Belyakov's
CV listed his education and the years his degrees were conferred, as well as his extensive
professional history, including past academic and professional positions, awards and
publications, and speaking engagements.  *See* Pl.'s Resp. Ex. 3.  On December 20, 2012,
Stewart-Jones responded to the job posting in the same fashion.  Mahyera Decl. ¶ 21.  His CV
specifically listed his birthdate (in January 1978) and national origin (British).  *See* Mahyera
Decl. Ex. G.  It also listed his education and extensive professional history, which included a
Ph.D. in structural biology, two postdoctoral fellowships in human immunology, and numerous
publications.  *Id.*

On December 26, 2012, Mahyera offered the research scientist position to Stewart-Jones.
Mahyera Decl. Ex. K, ECF No. 29-1, at 40.  In a declaration, Mahyera states that she selected

4

Stewart-Jones because "NIH had previously informed MSC that NIH wanted Stewart-Jones to fill the position." Mahyera Decl. ¶ 29. She did not evaluate or screen any of the 31 potential candidates, nor did she request that any of them submit formal applications or interview for the position. *Id.* ¶ 23. She did not review Belyakov's CV and did not know Belyakov's age or national origin, or that Belyakov had previously filed EEOC charges. *Id.* ¶ 24, 25. She never discussed Belyakov with anyone at NIH and never forwarded to NIH any of the materials received from Belyakov or any of the 31 potential candidates for the position, nor did any other MSC employee. *Id.* ¶¶ 26–27.

Stewart-Jones accepted the position on December 30, 2012. *See* Mahyera Decl. Ex. K at 41–42. Shortly thereafter, an MSC employee sent the other 30 potential candidates identical emails notifying them that they had not been selected. Mahyera Decl. ¶ 29. Belyakov received his email on January 7, 2013, from MSC recruiter Elisa Johnston. *See* Mahyera Decl. Ex. L, ECF No. 29-1. It read:

> Dear Igor,
>
> Thank you for your interest in the Scientist position with MSC.
>
> While your credentials and skills are impressive, another candidate's qualifications were more suited for this position.

*Id.* When Belyakov responded with an email asserting that he was "highly qualified for the position," Johnston replied:

> We had numerous qualified applicants for this position. Please continue to check our website for new opportunities.

Mahyera Decl. Ex. M, ECF No. 29-1.

### III.    Procedural History

On March 1, 2013, Belyakov filed an EEOC charge against MSC alleging age discrimination and retaliation. *See* Belyakov Apr. 3 Dep. Ex. 16, ECF No. 29-1. In the charge, Belyakov alleged that he was not given a valid explanation for why he was not selected for the research scientist position, and that he believed the denial was due to his age and previous discrimination complaints. *See id.* On June 4, 2013, Belyakov wrote a letter to the EEOC in which he noted that he wanted to add a claim for discrimination based on national origin to his charge "based on information presented for the first time" by MSC. *See* Pl.'s Dispositive Pretrial Mot. Ex. 6 at 9, ECF. No. 31-7. On September 20, 2013, the EEOC dismissed the charge, finding that it was unable to conclude that MSC had violated Title VII or the ADEA based on the information obtained through its investigation, and issued notice of the right to sue. *See* Belyakov Dep. Ex. 22, May 1, 2014, ECF No. 29-1.

On December 4, 2013, Belyakov filed suit in this Court alleging age discrimination, national original discrimination, and retaliation, and he served the Complaint on MSC on January 15, 2014. *See* ECF Nos. 1, 7. On April 11, 2014, midway through discovery, Belyakov filed a supplement to the Complaint that sought to add charges for breach of contract and fraud (the "Additional Charges"). *See* Pl.'s Add'l Charges Against MSC Based on New Evid. ("Pl.'s Add'l Charges"), ECF No. 15. In the Additional Charges, Belyakov argued that MSC breached a contract when it advertised a search process but did not evaluate any of the candidates. *See id.* at 4. He had also argued that the job posting never mentioned that MSC only wanted potential candidates in case Stewart-Jones did not accept the position and that MSC made "many dishonest and fraudulent statements." *Id.*

6

MSC filed a motion to strike or dismiss the Additional Charges (breach of contract and fraud) on April 16, 2014, on the grounds that they were procedurally improper under Federal Rule of Civil Procedure 15(a) and failed to state a claim under Rule 12(b)(6). *See* Def.'s Mem. Supp. Mot. Strike or Dismiss "Additional Charges," ECF No. 16. MSC argued that Belyakov attempted to amend the Complaint after the permissible period without consent from the opposing party or the Court, and that he did not include the requisite clean and redline copies of the Complaint in the filing. *See id.* at 3. MSC also argued that the job posting was not a contract and that Belyakov did not plead fraud with the particularity required by Rule 9(b). *See id.* at 3–6.

Belyakov did not oppose MSC's motion. Accordingly, on May 19, 2014, the Court declined to strike the breach of contract and fraud claims on procedural grounds, but dismissed them under Rule 12(b)(6) "on the uncontroverted bases asserted in the motion." *See* Letter Order at 3 (Grimm, J.), ECF No. 21 (citations and internal quotation marks omitted). On May 29, 2014, Belyakov filed a correspondence objecting to the dismissal of his breach of contract and fraud claims, *see* ECF No. 24, which the Court construed as a motion for reconsideration on which the parties would be permitted to file briefs, *see* ECF No. 25. On June 23, 2014, Belyakov and MSC both filed briefs on this Motion. ECF Nos. 27, 28.

On June 24, 2014, MSC filed a Motion to Dismiss and for Summary Judgment. ECF No. 29. On August 4, 2014, Belyakov filed a motion entitled "Plaintiff's Pretrial Dispositive Motion." ECF No. 36. The Court will address each of the motions in turn.

## DISCUSSION

### I.    Belyakov's Motion to Reconsider

In his May 29 correspondence, Belyakov argues that the Court should not have dismissed his breach of contract and fraud claims because he was unaware that he had to oppose the motion to dismiss and did not intend to abandon his claims. *See* Correspondence at 1, ECF No. 24. The Court construed these arguments as a motion to reconsider under Federal Rule of Civil Procedure 54(b), *see* ECF No. 25, which provides that "any order or other decision" that does not end the action "may be revised at any time before entry of a judgment." Fed. R. Civ. P. 54(b).

The Court's ruling in the Letter Order dismissing Belyakov's breach of contract and fraud claims was based on the Court's authority to dismiss claims "on the uncontroverted bases asserted" in a motion to dismiss if the plaintiff fails to respond to the motion within the required time. *See Pueschel v. United States*, 369 F.3d 345, 353–54 (4th Cir. 2004). The Letter Order specifically indicated that the dismissal was "without reaching the merits." *Id.* at 3. Now that Belyakov has responded, the Court considers the merits of Belyakov's "Additional Charges" submission, which the Court construes as a motion for leave to amend the Complaint by adding breach of contract and fraud counts. *See Wright v. Collins*, 766 F.3d 841, 847 n.3 (4th Cir. 1985) ("[T]he norm should be to decide claims on their merits, and the mere inaction of a party or his lawyer should not result in the loss of a hypothetically meritorious claim, except in those limited instances . . . where clear notice is given in advance that a certain procedural default will or might result in loss of a claim or defense." (citation and internal quotation marks omitted)). Upon such review, the Court concludes, under a Rule 12(b)(6) standard, that the claims for

8

breach of contract and fraud should not be permitted because Belyakov has failed to state a valid claim under either theory.[1] Fed. R. Civ. P. 12(b)(6).

Belyakov argues that MSC breached a contract because it promised a full search process under which the final candidate would have been chosen after an interview. *See* Pl.'s Add'l Charges at 3. He contends that the job posting formed a contract between MSC and the potential candidates. *Id.* The job posting, however, bore no indicia of a contract under Maryland law. To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation. *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). A contract is formed when an offer made by one person is accepted by another. *Prince George's Cnty. v. Silverman*, 472 A.2d 104, 112 (Md. 1984). "[A]n invitation to bid is not an offer, but the bid or tender is an offer which creates no rights until accepted." *Id.* Consistent with this principle, a job posting is similar to an advertisement offering goods or services, which does not constitute a binding contract. *See* Restatement (Second) of Contracts § 26 cmt. b (1981) ("Advertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell.").

Thus, in simply publicizing an employment opportunity with NIH and inviting individuals to apply, MSC made no offer or promise that potential candidates could accept to form a contract. *See Silverman*, 472 A.2d at 112; *Rofra, Inc. v. Bd. of Educ., Prince George's Cnty.*, 346 A.2d 458, 459 (Md. Ct. Spec. App. 1975) ("[A]n ordinary advertisement for bids or

---

[1] MSC argues that Belyakov abandoned his fraud claim by failing to address fraud in his Motion to Reconsider. *See* Def.'s Resp. Opp. Mot. Reconsider at 3, ECF No. 28. Belyakov, however, noted his desire to maintain the fraud claim in his original filing. *See* Correspondence at 1. Although he did not use the word "fraud" in his Motion, the gist of his fraud claim remains intact – that MSC allegedly purported to engage in a full search process when it did not intend to evaluate any candidates. *See* Mot. Reconsider at 1, ECF No. 28. Accordingly, the Court declines to dismiss the fraud claim on procedural grounds.

tenders is not itself an offer . . . . [A] contract is not formed until the lowest bid is in fact accepted."); *see also Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 868–69 (Colo. App. 2008) (concluding that an internet job posting was an advertisement and thus not an offer by the employer that created an implied contract with the employee). To the extent there was an offer, it was made by Belyakov when he submitted an application. *See Silverman*, 472 A.2d at 112. Because MSC never accepted it, there was no contract.

Furthermore, the job posting did not create a contract binding MSC to engage in any particular hiring process, as it did not contain any express obligation on MSC's part to confer a specific and definite benefit to anyone who responded. Generally, contracts "must express with definiteness and certainty the nature and extent of the parties' obligations." *Kiley v. First Nat'l Bank of Md.*, 649 A.2d 1145, 1152 (Md. Ct. Spec. App. 1994) (citing *Canaras v. Lift Truck Servs.*, 322 A.2d 866, 871 (Md. 1974)). To be contractual under Maryland law, employment-related pronouncements must make a commitment to provide a "specific and definite benefit" to the person to whom the offer is made, should the offer be accepted. *See MacGill v. Blue Cross of Md., Inc.*, 551 A.2d 501, 503–04 (Md. Ct. Spec. App. 1989). The job posting stated only that MSC sought research scientist candidates for NIH, and that the position was full-time and located in Rockville, Maryland. *Id.* at 2. As alleged, the job posting did not promise that every candidate would be evaluated, nor did it guarantee that any candidates would be interviewed. Belyakov therefore did not properly allege that MSC breached a contract when it selected Stewart-Jones without evaluating other candidates

Belaykov has also failed to state a claim for fraud. To establish fraud under Maryland law, the plaintiff must show that "(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was

10

made with reckless indifference to its truth, (3) the misrepresentation was made for the purposes of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation." *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49 (Md. 2013).  In addition, Federal Rule of Civil Procedure 9(b) requires plaintiffs in federal court to plead fraud claims with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  Under this heightened pleading standard, the plaintiff must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Belyakov's fraud claim fails for several reasons.  First, although Belyakov argued that the job posting was fraudulent on the bases that MSC did not actually conduct a search process and did not make clear that MSC was actually seeking only backup candidates in the event that Stewart-Jones did not accept the job, *see* Pl.'s Add'l Charges at 4, there is nothing to suggest that MSC made a false representation in the job posting.  The posting only stated that MSC was looking for a full-time scientist to support the NIH.  *See id.* at 2 ¶ 1.  Given that MSC advertised the position on November 29, 2012, *id.*, and Stewart-Jones did not accept the position until December 30, 2012, *id.* at 2 ¶ 3, this statement was accurate as of the time that Belyakov submitted his application on December 12, 2012, *id.* at 2 ¶ 2.

Second, even if the Court were to assume that the mere posting of a job announcement entitles every candidate to full evaluative consideration, Belyakov did not sufficiently allege that he suffered a compensable injury.  In determining whether a plaintiff, under Maryland law, suffered a compensable injury by relying on the possibility of upcoming or continuing

employment, courts have focused on whether an employer convinced the plaintiff to accept one job offer over other offers to his detriment, not on whether the plaintiff decided to apply. *See Griesi v. Atl. Gen. Hosp. Corp.*, 756 A.2d 548, 556 (Md. 2000) (relying on a hospital's repeated representations that he had been offered a job, the plaintiff turned down a job offer at another institution, only to learn that no job was available at the hospital); *Adler v. Am. Standard Corp.*, 538 F. Supp. 572, 580–81 (D. Md. 1982) (relying on employer's assurances that his work was satisfactory, an employee rejected job offers elsewhere when, in fact, the employer was dissatisfied with the employee's work). In those instances, the plaintiffs suffered some economic injury and would have been in a materially better position had the misrepresentations not been made. Applying for a job is by no means a guarantee that an applicant will receive a job offer that would reasonably lead the applicant to reject job offers from other employers or decline to apply elsewhere. Because Belyakov's only action relating to the job posting was to submit an application, he cannot allege any economic injury that resulted from MSC's posting of the position.

Lastly, to the extent that Belyakov asserts that fraud arises from any action by MSC other than advertising the position, Belyakov fails to plead fraud with particularity as required by Rule 9(b). Other than stating generally throughout the Additional Charges that "MSC's search process is based on dishonesty and fraud" and that "MSC organized a fraudulent search process," *see, e.g.*, Pl.'s Add'l Charges at 4, 7, Belyakov does not clearly allege the time, place, and contents of any other alleged misrepresentations or fraudulent statements. For these reasons, Belyakov's Additional Charges fail to state a claim and were properly dismissed.

## II.    MSC's Motion to Dismiss and for Summary Judgment

In its Motion, MSC seeks (1) dismissal of Belyakov's national origin discrimination claim under Federal Rule of Civil Procedure 12(b)(1) for failure to exhaust administrative remedies; and (2) summary judgment on the age discrimination and retaliation claims.  For the reasons set for the below, the Motion is granted.

### A.    Motion to Dismiss the National Origin Discrimination Claim for Failure to Exhaust Administrative Remedies

At the outset of MSC's dispositive motion, MSC moves to dismiss Belyakov's national origin discrimination claim for lack of subject matter jurisdiction Rule 12(b)(1) on the basis that Belyakov did not exhaust administrative remedies as to that claim.  *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009) (holding that the failure to raise a claim in an EEOC charge, and thus to exhaust administrative remedies, implicates subject matter jurisdiction).  On a Rule 12(b)(1) motion, a defendant may assert either (1) a facial challenge that the allegations as stated in the complaint are not to sufficient to establish subject matter jurisdiction; or (2) a factual challenge that the allegations establishing jurisdiction are not true.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  In this case, MSC asserts a factual challenge that Belyakov has not, in fact, exhausted his administrative remedies as he initially claimed. Accordingly, the Court may go beyond the pleadings and consider the documents submitted by MSC with its Motion in making its determination.  *See id.*; *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  The Motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

Before filing suit under Title VII, a plaintiff must file an administrative charge with the EEOC. *See* 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1). As a consequence, any claims brought in a subsequent lawsuit must be stated in the EEOC charge, reasonably related to the claims raised in the EEOC charge, or "developed by reasonable investigation of the original complaint." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). "The plaintiff's claim will generally be barred if his charge alleges discrimination on one basis – such as race – and he introduces another basis in formal litigation – such as sex." *Id.* at 509. In determining what claims have been properly brought, the Court is confined only to the charge filed with the EEOC. *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013).

Belyakov did not check the box for national origin discrimination in his EEOC charge, nor did he claim national origin discrimination or allege any facts relating to his national origin or that of Stewart-Jones in the narrative portion of his EEOC charge. *See* Belyakov Apr. 3 Dep. Ex. 16. Instead, he asserted only claims for, and alleged facts relating to, age discrimination in violation of the ADEA and retaliation in violation of Title VII, noting that he was 52 years old when he responded to the job posting and that he had previously filed complaints against NIH. *See id.* Under these circumstances, he failed to exhaust the national origin claim. *See Jones*, 551 F.3d at 301 (concluding, after the plaintiff checked only the retaliation box on her EEOC charge, that her "failure to exhaust administrative remedies deprived the district court of subject matter jurisdiction over" her subsequent age, sex, and race discrimination claims).

Belyakov argues that he properly raised national origin discrimination by writing a letter to the EEOC on June 4, 2013, in which he informed the agency that he "would like to add the national origin discrimination charges against the MSC." Pl.'s Resp. at 7; *see* Pl.'s Resp. Ex. 6 at 2, ECF No. 31-7. Although a charge may be amended to cure any omissions, *see* 29 C.F.R.

14

§ 1601.12(b) (2015), a plaintiff does not properly amend a charge by mailing a private letter to the EEOC, even if the plaintiff subjectively believes that he is amending the charge, *Sloop v. Mem'l Mission Hosp.*, 198 F.3d 147, 149 (4th Cir. 1999) (finding that a retaliation claim was not exhausted when it was referenced only in a letter, not the EEOC charge document); *Balas*, 711 F.3d at 408 (holding that claims asserted only in letters and intake questionnaire responses are not part of the EEOC charge and have not been exhausted). Simply mailing a private letter to the EEOC does not "put the charged party on notice of the claims raised against it." *Sloop*, 198 F.3d at 149. Because Belyakov did not include the national origin claim in the EEOC charge, and MSC was therefore not given proper notice of that claim, Belyakov is confined to the age discrimination and retaliation claims that he raised in the charge. *See id.*; *Balas*, 711 F.3d at 408.

In this instance, the Court notes that even if Belyakov had exhausted his administrative remedies as to the national origin discrimination claim, MSC would nevertheless be entitled to summary judgment on that claim. Belyakov's national origin discrimination claim derives from the same facts, and is postured in an identical manner, as his age discrimination claim. He asserts that, although not explicitly stated, both his national origin and age could be discerned from the information in his CV, and that MSC declined to hire him based on his national origin, age, or both. *See* Pl.'s Resp. at 4, 8–9. The Court therefore finds that the same analysis establishing that MSC is entitled to summary judgment on the age discrimination claim, *see infra* Part II.B.2, applies equally to the national origin discrimination claim.

## B.    Motion for Summary Judgment

### 1.    Legal Standard

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49. The Court may rely only on facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## 2.    Age Discrimination Under the ADEA

MSC is entitled to summary judgment on Belyakov's age discrimination claim. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual" over the age of 40 "*because of* such individual's age." 29 U.S.C. §§ 623(a)(1); 631(a) (emphasis added). To prove discrimination under the ADEA, therefore, a plaintiff must demonstrate that age was the "but for" cause of such treatment. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *EEOC v. Balt. Cnty.*, 747 F.3d 267, 273 (4th Cir. 2014). "But for" causation can be shown either through direct evidence or through circumstantial evidence under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Gross*, 557 U.S. at 177–78; *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case that: (1) he was a member of a protected class – in other words, that he was at least 40 years

16

old; (2) his employer had an open position for which he was qualified; (3) he was rejected despite being qualified; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, regardless of whether that applicant is also a member of the protected class. *Laber*, 438 F.3d at 430. Once a *prima facie* case is established, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. *Id.* If the defendant can meet such a burden, then the burden shifts back to the plaintiff to show that the articulated reason is a pretext for age discrimination. *Id.* The plaintiff must do more than simply show that the articulated reason is false. *Id.* He must show that the employer discriminated against him on the basis of his age. *Id.* at 430–31.

Belyakov cannot establish but for causation because the evidence establishes that the decision to hire Stewart-Jones was made well before anyone involved in the selection process knew that Belyakov had applied or had any information about his age. Belyakov does not rely on any direct evidence of age discrimination. Although he apparently has established a *prima facie* case for age discrimination under the *McDonnell Douglas* framework, because he is over 40 years old, applied for a position for which he was ostensibly qualified, was not selected, and the position went to a significantly younger applicant, Belyakov has not provided evidence that could rebut as pretextual MSC's nondiscriminatory reason for hiring Stewart-Jones – that Stewart-Jones had effectively been selected before the job posting was made, and thus before anyone at MSC or NIH evaluated any of the other candidates. In an email dated November 5, 2012, NIH informed MSC that it wanted to hire Stewart-Jones for the open position: "We are interested in bring[ing] Giulliame (sic) Stewart[-Jones] on board (please see attached CV). He will backfill Wataru." Mahyera Decl. Ex. G. At that point, MSC knew that it would offer the

17

position to Stewart-Jones and would only post the position in order to have back-up candidates in the event that Stewart-Jones did not accept the offer or could not obtain a work visa. Mahyera Decl. ¶ 17. Such a pre-selection fits within MSC's hiring policy, which contains an exception for "when the customer, after reviewing the resume of a single candidate, even before other candidates have been submitted, expects [MSC] to make an offer of employment." Mahyera Decl. Ex. E, ECF No. 29-1, at 25. Thus, the decision to make an offer to Stewart-Jones was made three weeks before MSC posted the position on November 29, 2012, *see* Mahyera Decl. ¶ 18, and a little over a month before Belyakov responded to the job posting on December 12, 2012, *see id.* ¶ 20. There is no evidence to refute the assertion by Mahyera, the decision maker at MSC, that she did not evaluate or screen any of the 31 potential candidates, and thus never knew that Belaykov had applied for the position, let alone his age, by the time that MSC made a formal offer to Stewart-Jones on December 26, 2012. *See id.* ¶¶ 22–23.

Belyakov argues that there is evidence that MSC reviewed his application and took note of his age, which arguably can be established from the dates on his CV, because Johnston, an MSC recruiter, responded to him by email that his "credentials and skills are impressive" and that MSC "had numerous qualified applicants," indicating that at least Johnston reviewed all of the applications. *See* Pl.'s Resp. at 4. Even if Johnston had reviewed Belyakov's submission and had estimated his age, the ultimate hiring decision rested with Mahyera. There is no evidence that Johnston communicated to Mahyera or any other individual at MSC that Belyakov had applied for the position, or discussed his age, or that Mahyera acted upon any such information with a discriminatory animus. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010) ("It is the decision maker's intent that remains crucial, and in the

absence of a clear nexus with the employment decision in question, the materiality of stray or isolated [evidence of a subordinate's intent] is substantially reduced.").

Belyakov's "cat's paw" theory argument also fails. Although the articulation is somewhat fractured, Belyakov in essence argues that MSC cannot avoid liability if Mahyera, the decisionmaker, rubber stamped someone else's discriminatory decision – presumably, that of NIH or of Johnston. *See* Pl.'s Dispositive Pretrial Mot. at 13–14, ECF No. 36. The "cat's paw" or "rubber stamp" theory imposes liability on an employer for the discriminatory motivations of a supervisor who was "principally responsible" for an adverse employment decision, even if that supervisor was not the formal decisionmaker. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 288 (4th Cir. 2004). In the case of a subordinate employee alleged to have a discriminatory motivation, the plaintiff "must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or [as] the actual decisionmaker for the employer." *Id.* at 291.

Although the argument can be made that NIH was principally responsible for the selection of Stewart-Jones, there is no evidence that NIH was aware that Belyakov had applied for the position, much less was aware of his age, when it told MSC that it wanted to hire Stewart-Jones. As to Johnston, even if she had become aware of Belyakov's age, there is no evidence that she was principally responsible for making the decision or that she acted with a discriminatory motivation. The evidence is thus insufficient to find MSC liable for discrimination under this theory.

Finally, Belyakov relies on the affidavit of an expert witness, Dr. Oleg I. Kuzmenok,[2] and *Holcomb v Powell*, 433 F.3d 889 (D.C. Cir. 2006), to argue that there is evidence to establish discriminatory intent based on Kuzmenok's conclusion that Belyakov's credentials are significantly superior to those of Stewart-Jones. In *Holcomb*, the United States Court of Appeals for the District of Columbia Circuit explained that "a factfinder could infer discrimination if the evidence showed a reasonable employer would have found the plaintiff significantly better qualified for the job but nevertheless failed to offer the position to [him.]" *Id.* at 897. This consideration is typically implicated where an employer directly compares the qualifications of two candidates, *see, e.g.*, *id.* at 896–97, or uses subjective criteria to justify hiring one candidate over another, which can be used to mask discrimination in some cases, *see, e.g.*, *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 & n.10, 1298 (D.C. Cir. 1998). It has little applicability here, where the decision maker at MSC never reviewed the qualifications of any candidates other than Stewart-Jones, never interviewed any of the candidates, and did not make any judgment calls based on comparing one candidate to another.

Belyakov therefore fails to raise a genuine issue of material fact, and MSC is entitled to summary judgment as to the ADEA claim.

### 3.    Retaliation Under Title VII

MSC is also entitled to summary judgment on Belyakov's retaliation claim. To establish a *prima facie* case of retaliation, a plaintiff must prove: (1) that the plaintiff engaged in a protected activity; (2) that the employer took an adverse employment action against the plaintiff; and (3) that there was a causal link between the two events. *Balas*, 711 F.3d at 410. The first

---

[2] Though Belyakov does not attach Kuzmenok's affidavit to any of his briefings for either of the motions for summary judgment, Belyakov notes that he had previously filed Kuzmenok's affidavit with the Court. *See* Pl.'s Resp. at 1–2; *see also* ECF No. 15-1.

two prongs are met here.  Belyakov engaged in a protected activity by filing four EEOC charges

against HHS in the years prior to responding to MSC's job posting.  *See Belyakov v. Leavitt*, No.

DKC-04-4008, Mem. Op. at 5 (D. Md. Sept. 6, 2007); *Belyakov v. Leavitt*, No. DKC-06-2973,

Mem. Op. (D. Md. Sept. 6, 2007); *Belyakov v. Johnson*, No. DKC-08-0757, Mem. Op. (D. Md.

Feb. 5, 2009); Belyakov Apr. 3 Dep. 34:24–35:23.  On January 7, 2013, Belyakov learned that

he did not get the research scientist position with MSC at NIH.  *See* Mahyera Decl. Ex. L.

A causal connection "exists where the employer takes [an] adverse employment action

against an employee shortly after learning of the protected activity."  *Price v. Thompson*, 380

F.3d 209, 213 (4th Cir. 2004).  No causal connection exists here because Mahyera did not know

that Belyakov had applied for the job, and did not know that he had previously filed EEOC

complaints, at the time that she hired Stewart-Jones.  *See* Mahyera Decl. ¶¶ 23, 24.  Although

Belyakov argues that the discrimination complaints he brought in federal court are a matter of

public record, and that MSC was aware of the EEOC charges because it references them in the

memoranda in support of its motion summary judgment, these assertions do not establish that

MSC was aware of this information *before* the decision.  Furthermore, knowledge of an

applicant's prior protected activity alone is insufficient to establish causation for the purposes of

retaliation.  *Gibson v. Old Town Trolley Tours of Wash., D.C.*, 160 F.3d 177, 182 (4th Cir. 1998).

There must be evidence that MSC was motivated in some way by the filing of the EEOC

charges.  *See id.*  No such evidence has been presented to the Court.

To the extent that Belyakov seeks to argue that NIH, an HHS agency, was at least

institutionally aware of his prior EEOC complaints, *see* Pl.'s Resp. at 13, his claim fails because

no evidence has been presented that NIH was ever aware that Belyakov was interested in or

applied for the position. Accordingly, the evidence does not support a finding of retaliation, and MSC is entitled to summary judgment on that claim.

### III.     Plaintiff's Dispositive Pretrial Motion

After the parties fully briefed MSC's Motion for Summary Judgment, Belyakov filed a motion, entitled "Plaintiff's Dispositive Pretrial Motion," in which he argues there is sufficient evidence to render judgment in his favor as to all claims. *See* Pl.'s Resp. to Def.'s Resp. Opp. Pl.'s Dispositive Pretrial Mot. at 1, ECF No. 38. The Court construes this Motion as one for summary judgment.

In the Motion, however, Belyakov repeats the same arguments that he made in opposition to MSC's Motion for Summary Judgment – namely, that the recruiting process was untruthful, that MSC knew his age, national origin, and previous complaint filing history when he responded to the job posting, and that its selection of Stewart-Jones over him was discriminatory based on one or more of these factors. Having addressed and rejected these arguments while deciding MSC's summary judgment motion, under the standard of viewing the evidence in the light most favorable to Belyakov, *see Anderson*, 477 U.S. at 255, the Court concludes that, under the less favorable standard applicable to his Motion, on which the evidence must be viewed in the light most favorable to MSC, *see id.*, Belyakov is not entitled to summary judgment on these grounds. For the reasons stated above in Part II.B (MSC's Motion to Dismiss and for Summary Judgment), Plaintiff's Dispositive Pretrial Motion is denied.

## CONCLUSION

For the foregoing reasons, Belyakov's Motion to Reconsider, ECF No. 27, is DENIED. Defendant's Motion to Dismiss and for Summary Judgment, ECF No. 29, is GRANTED. Belyakov's claim for discrimination on the basis of national origin is DISMISSED, and MSC is entitled to summary judgment on Belyakov's age discrimination and retaliation claims. Finally, Belyakov's Dispositive Pretrial Motion, construed as a motion for summary judgment, is DENIED. A separate Order follows.

Date: February 6, 2015

THEODORE D. CHUANG
United States District Judge